UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Case No: 11-1769 PJS/JSM

Eric Worre

    Plaintiff

v.

Agel Enterprises, LLC

    Defendant

**COMPLAINT &
DEMAND FOR JURY TRIAL**

Plaintiff Eric Worre, through his undersigned counsel, hereby alleges and seeks relief against Defendant Agel Enterprises, LLC as follows:

## PARTIES

1. Plaintiff Eric Worre ("Mr. Worre") is a citizen of Minnesota.

2. Defendant Agel Enterprises, LLC ("Agel") is a Utah limited liability company that engages in business with Mr. Worre and others in Minnesota.

## JURISDICTION & VENUE

3. This Court has subject matter jurisdiction under 28 U.S.C. 1332 & 2201 because the parties are citizens of different states and there exists an actual controversy in an amount exceeding $75,000.

4. Venue is proper in this Court under 28 U.S.C. 1391(a)(1) & 28 U.S.C. 1391(a)(2) because Agel resides in this judicial district, and because a substantial part of the events or omissions giving rise to the claims occurred in Minnesota.

SCANNED
JUL 5 2011
U.S. DISTRICT COURT MPLS

5. This Court has personal jurisdiction over Agel because, among other things, this matter arose out of Agel negotiating and entering into a contract with Mr. Worre, a Minnesota resident, while he was in Minnesota, and doing business with Mr. Worre while he was in Minnesota, and knowingly causing injury in Minnesota, and also because Agel regularly does business in Minnesota with Mr. Worre and others.

## FACTUAL BACKGROUND

6. Agel is in the business of selling nutritional supplements through a national and international network of independent contractors in a sales structure that is commonly called multi-level marketing. These independent contractors are called distributors or team members, and the independent contractors recruited under them make up what are called their distributorships or organizations.

7. Mr. Worre has been an Agel distributor since 2005.

8. In 2011, Agel has been discontinuing or limiting Mr. Worre's pay.

9. Such conduct on Agel's part in discontinuing or limiting Mr. Worre's pay is in violation of Mr. Worre's rights.

10. Mr. Worre is entitled to his pay under the terms of the contract between the parties.

11. Mr. Worre is also entitled to his pay under applicable law.

12. Even if there was some legitimate basis for Agel to discontinue or limit Mr. Worre's pay under the standard contract that Agel has with its distributors in general (which there was not), such discontinuance or limitation is not permitted under the particular contract between the parties.

13. The parties entered into an agreement dated June 1, 2005 (the "2005 Agreement") that amended the standard contract.

14. Pursuant to Section 5 of the 2005 Agreement, the parties agreed as follows:

> **5. Termination.** To the extent, if any, that any other part of the Contract (including, but not limited to, the Company's Policies & Procedures) may state that the Company may terminate any of Worre's rights under the Contract, reassign any or all of his Organization to another sponsor, or discontinue or limit his pay, the Company hereby agrees not to ever take any such action except if Worre commits a breach of the Contract and Worre fails to remedy such breach within 60 days after receiving notice thereof from the Company or within such longer period as may be reasonable necessary under the circumstances.

15. Agel is in violation of the above provision because Mr. Worre did not commit a breach of the contract. Even if Agel believed Mr. Worre did commit a breach, Agel was required to provide Mr. Worre with notice of such breach and an opportunity to cure it, but Agel did not do that.

16. Apart from being in violation of Mr. Worre's rights as described above, such conduct on Agel's part in discontinuing or limiting Mr. Worre's pay also triggered the buyout provision in the agreement between the parties.

17. The 2005 Agreement contains a buyout provision that operates whether or not there is a breach.

18. Pursuant to Section 6 of the 2005 Agreement, the parties agreed as follows:

> **6. Buy-Out.** If the Company terminates any of Worre's rights under the Contract, reassigns any or all of his Organization to another sponsor, or discontinues or limits his pay (in each case, whether in breach of or in compliance with the Contract), then, at Worre's option, the Company will buy-out his Distributorship as follows: The Company will pay Worre monthly for thirty (30) months an amount equal to the average monthly pay earned by Worre, excluding amounts earned pursuant to sections 2 and 3 of this Amendment, calculated by using the average of the three full months preceding the subject termination, reassignment, discontinuance, or limitation. For example, if such a termination occurs on an April 18th, and if Worre's pay from his distributorship, excluding amounts earned pursuant to sections 2 and 3 of this Amendment, was $50,000 in March, $60,000 in February, and $40,000 in January, then the Company would pay Worre $50,000 per month for thirty (30) months . . . . The rights accorded to Worre hereunder shall be in addition to any rights and remedies that Worre may have at law or in equity, by separate agreement or otherwise.

19. Pursuant to the above provision, Mr. Worre had the option to require Agel to buy his distributorship and he exercised that option.

20. The buyout price is 30 times the average monthly pay earned by Worre for the three full months preceding the pay discontinuance or limitation.

21. Agel discontinued or limited Mr. Worre's pay regarding his January 2011 pay by refusing to pay him $22,066 of those earnings.

22. Mr. Worre's earnings in October, November, and December of 2010 were $57,234, $63,281, and $85,267.

23. The average of the above three amounts is $68,594.

24. This means the buyout price is $2,057,820 (i.e., 30 times $68,594).

25. Agel is required to pay the buyout price in thirty equal monthly installments (i.e., 30 monthly payments of $68,594 each).

26. On information and belief, Agel has reassigned some of Mr. Worre's organization in violation of Mr. Worre's rights.

27. According to the commission plan, Agel is supposed to pay Mr. Worre a 30% override regarding Randy Gage.

28. On information and belief, Agel has been paying Randy Gage certain payments without paying the corresponding override earnings to Mr. Worre.

29. Agel recently asserted it has a $150,000 claim against Mr. Worre regarding Agel's payments to a former Agel independent contractor named Raven Starre. Mr. Worre disputes this.

30. Agel recently asserted it has claims against Mr. Worre for "substantial damages" based on Agel's assertion that "Mr. Worre is in violation of Agel's Policies and Procedures in the same manner in which Mr. Schroeder violated them". Mr. Worre disputes this.

## FIRST CLAIM
(Backpay)

31. Agel is not paying Mr. Worre his full earnings.

32. Agel is required to pay Mr. Worre these earnings.

## SECOND CLAIM
(Buyout)

33. Mr. Worre is entitled to the buyout of his distributorship.

34. The buyout price is $2,057,820.

35. Agel is required to pay the buyout price to Mr. Worre in thirty equal monthly installments of $68,594 each.

## THIRD CLAIM
(Unjust Enrichment)

36. Mr. Worre's distributorship generates revenue for Agel, and Agel is required to pay Mr. Worre commissions thereon.

37. Agel is being unjustly enriched by receiving the revenue from Mr. Worre's distributorship while also keeping the commissions it is supposed to pay him thereon.

## FOURTH CLAIM
(Conversion)

38. Mr. Worre's distributorship generates revenue for Agel, and Agel is required to pay Mr. Worre commissions thereon.

39. Agel is converting Mr. Worre's commissions.

## FIFTH CLAIM
(Declaratory Relief – Raven Starre Controversy)

40. Agel recently asserted it has a $150,000 claim against Mr. Worre in relation to Agel's payments to a former Agel independent contractor named Raven Starre. Mr. Worre disputes this.

41. Mr. Worre is entitled to a declaration that he owes nothing to Agel with respect to Raven Starre.

## SIXTH CLAIM
(Declaratory Relief – Schroeder Controversy)

42. Agel recently asserted it has claims against Mr. Worre for "substantial damages" based on Agel's assertion that "Mr. Worre is in violation of Agel's Policies and Procedures in the same manner in which Mr. Schroeder violated them". Worre disputes this.

43. Mr. Worre is entitled to a declaration that he owes nothing to Agel regarding Agel's wrongful assertion that he "is in violation of Agel's Policies and Procedures in the same manner in which Mr. Schroeder violated them".

**WHEREFORE**, Mr. Worre asks the Court to enter judgment in his favor against Agel as follows:

(a) A judgment against Agel in the amount of Mr. Worre's unpaid earnings;

(b) A judgment against Agel in the amount of $2,057,820 for the buyout;

(c) A declaration that Mr. Worre owes nothing to Agel with respect to Raven Starre;

(d) A declaration that Mr. Worre owes nothing to Agel regarding Agel's wrongful assertion that he "is in violation of Agel's Policies and Procedures in the same manner in which Mr. Schroeder violated them";

(e)  An award of pre and post judgment interest, costs and attorneys fees;

(f)  An award of any punitive damages and/or penalties that may be available under applicable law; and

(g)  Granting Mr. Worre such other relief as the Court deems proper.

Date: July 5, 2011

**WIESE LAW FIRM, PA**

*Pace*

_____
Pace Klein (316489)
Pace@Wieselaw.com
3525 Plymouth Boulevard (Suite 209)
Plymouth, MN  55447
T: 763-201-8313
F: 763-201-8314

*Plaintiff's Counsel*

## JURY DEMAND

Plaintiff demands a trial by jury on all matters triable by a jury.

**WIESE LAW FIRM, PA**

*/s/ Pace/*

---

Pace Klein (316489)
Pace@Wieselaw.com
3525 Plymouth Boulevard (Suite 209)
Plymouth, MN  55447
T: 763-201-8313
F: 763-201-8314

*Plaintiff's Counsel*